**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
  :
JERIEL ALEXANDER,  :
  :
                            Plaintiff,  :          19-CV-10811 (OTW)
  :
           -against-  :          **OPINION & ORDER**
  :
JP MORGAN CHASE BANK, N.A.,  :
  :
                          Defendant.  :
  :
-------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

I.     **Introduction**

Plaintiff Jeriel Alexander, proceeding *pro se*, commenced this action pursuant Title II of the Civil Rights Act of 1964 ("Title II"), 42 U.S.C. § 2000a, alleging that defendant JP Morgan Chase Bank (hereafter "Chase") violated his rights by discriminating against him on the basis of his racial identity. Plaintiff alleges that he was discriminated against while attempting to make a withdrawal at a Chase branch, and that after making a complaint, Chase deposited money into his account in an attempt to bribe him into not pursuing litigation. Plaintiff seeks $25 million in damages. Chase has moved to dismiss Plaintiff's Complaint, (ECF 27), and Plaintiff opposed. (ECF 32; ECF 33). For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED.** In light of Plaintiff's *pro se* status, however, Plaintiff is also granted leave to file an amended complaint, by **May 3, 2021**, as detailed below.

II.     Background[1]

On March 22, 2018, Plaintiff alleges that he visited a branch of Chase in Stratford, Connecticut (the "Stratford branch") with his sister. (ECF 2 at 5). Plaintiff informed the teller that he wished to withdraw $3,330. (*Id.*) He entered his security pin as requested and waited for ten minutes. (*Id.*) The teller then requested that Plaintiff provide his driver's license and social security card. (*Id.*) Plaintiff questioned the teller and was told that she had "to run a criminal background check" to complete the withdrawal. (*Id*.) Another ten minutes passed and the teller informed Plaintiff that she was unable to locate his account. (*Id.*) He inquired as to why the teller could not locate his account and alleges the teller responded that it was because he is Black and "she cannot process [the] request base[d] on [his] skin color." (*Id.*) Plaintiff then immediately requested to speak with a manager. (*Id*.)[2]

Plaintiff subsequently called the Chase corporate number to file a complaint "concerning discrimination against race and color." (*Id.*) An unnamed representative told Plaintiff that Chase would investigate the matter. (*Id*. at 5-6). Plaintiff alleges, however, that no investigation or discipline took place. (*Id*. at 6). Plaintiff also alleges that after informing Chase that he "reserve[d] the rights to legal matters," he began receiving phone calls from a Chase executive, and received an attempted "bribe" from another Chase representative. (*Id*.) The

---

[1] Facts are as alleged in Plaintiff's Complaint. (ECF 2). For the purposes of deciding Defendant's motion to dismiss, the Court will assume that all allegations in Plaintiff's Complaint are true.
[2] In his opposition to Chase's motion to dismiss, Plaintiff clarifies that the manager of the Chase Stratford branch, Robert J. Vogel, "came over and assisted his employee [i.e., the teller] with the matter" and "pointed to the screen saying [Plaintiff's] account [had] been there on her screen." (ECF 32 at 2). Plaintiff does not allege that the teller refused Plaintiff service *after* the manager came over or that the manager mistreated Plaintiff; rather Plaintiff states that the manager later "called Chase to escalate [his] case" after Plaintiff called to file a discrimination complaint. (*Id.* at 3).

2

"bribe" consisted of a single deposit of $116[3] into Plaintiff's account late at night on September 20, 2019, nearly 18 months after the visit to the Chase Stratford branch alleged in the Complaint. (*Id.* at 5-6). Plaintiff alleges that when he told the representative to "stop" and that bribery was illegal, the representative said that her colleague "couldn't get to [him]" and that he should "please take the money." (*Id.*)

Plaintiff then filed the instant Complaint on November 20, 2019, alleging "racial profiling" in violation of Title II, which prohibits discrimination or segregation in places of public accommodation, and "bribery." (*Id*. at 2). On June 25, 2020, Chase moved to dismiss the Complaint on the basis that it fails to state a claim upon which any relief may be granted. (ECF 27).

### III.   Analysis

#### A.   Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[3] Plaintiff states, in his opposition to Chase's motion to dismiss, that a Chase executive he spoke to by phone told him "she [would] reverse back fees in [his] account as a complimentary [sic]." (ECF 32 at 3). He contends his account was "in clear standing and did not need reversal of any type of fee"; however, against his will, a service fee of $12 and an overdraft fee of $34 were reversed. (*Id.*) He states that "[a]ltogether the amount that was deposited is $112" (though the Complaint alleges $116) but does not provide details on transactions beyond the two reversals. (*Id.*).

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). More specifically, the plaintiff must allege enough facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

As relevant here, a court is "obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); *accord Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Thus, when considering Plaintiff's submissions, the Court must interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). Nevertheless, "to survive a motion to dismiss, *a pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 450 (S.D.N.Y. 2012) (internal citation omitted); *see also, e.g.*, *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("[P]*ro se* complaints must contain sufficient factual allegations to meet the plausibility standard.").

### B. Federal Discrimination Claims

#### 1. Title II Claim

Plaintiff alleges that Defendant discriminated against him in violation of Title II. That statute provides, in relevant part, that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). In order to bring a claim under Title II, a plaintiff must "allege facts showing (1) that he was deprived of equal use and enjoyment of a place of public accommodation and (2) facts which

demonstrate discriminatory intent." *Akyar v. TD Bank US Holding Co.*, 18-CV-379 (VSB), 2018 WL 4356734, at *5 (S.D.N.Y. Sept. 12, 2018); *see also Coward v. Town and Vill. of Harrison*, 665 F. Supp. 2d 281, 307 (S.D.N.Y. 2009).

The statute describes establishments that serve as places of public accommodation, stating:

> Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:
>
> (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;
>
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
>
> (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and
>
> (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a(b).

The list of places of public accommodation within the statute is considered exhaustive, not illustrative. *Akyar*, 2018 WL 4356734, at *5 (citing *Renxiong Huang v. Minghui.org*, No. 17-CV-5582 (ER), 2018 WL 3579103, at *3 (S.D.N.Y. July 25, 2018)).

Here, Plaintiff's claim fails because the actions alleged in the Complaint did not occur in a place of public accommodation. A bank, although a place in which the public is allowed, is not

5

considered a place of public accommodation under the statutory definition of 42 U.S.C. § 2000a(b)(1-4). Because § 2000a(b)(1-4) is an exhaustive list, rather than an illustrative one, a bank cannot be considered a place of public accommodation for the purposes of establishing a Title II claim. *See Akyar*, 2018 WL 4356734, at *5 (stating that "the text of § 2000a does not explicitly include banks . . . and courts have expressly concluded that banks are not places of public accommodation within the meaning of the provision.") (cleaned up). As a bank is not a place of public accommodation, Plaintiff's claim fails to establish the first element of a prima facie Title II case requiring that a plaintiff "allege facts showing (1) that he was deprived of equal use and enjoyment **of a place of public accommodation**." *Akyrar*, 2018 WL 4356734, at *5 (emphasis added). Accordingly, Plaintiff's Title II claim is dismissed on this basis.[4]

Moreover, while Plaintiff's failure to plead a public accommodation is fatal to his Title II claim, Plaintiff's claim also fails because he seeks monetary relief. When a plaintiff brings a Title II action, "he cannot recover damages," but rather is limited to injunctive relief (to stop the unlawful conduct) with an attorney's fee "unless special circumstances would render such an award [of an attorney's fee] unjust." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-02 (1968) (per curiam) ("A Title II suit is thus private in form only."); *see Rodrigues v. Fam. Just. Centers (Manhattan & Queens)*, No. 18-CV-6999 (JPO), 2019 WL 1988526, at *2 n.1 (S.D.N.Y. May 6, 2019) (finding Title II claim barred as a matter of law where plaintiff only sought

---

[4] Racial profiling and discrimination by banking institutions – and Title II's lack of protection against such discrimination – is of serious concern. The proposed "Fair Access to Financial Services Act of 2020," recently introduced in both the Senate and House, would extend Title II's protections to banking customers. *See* H.R. 8867, 116th Cong. (2020) ("All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, and accommodations of any financial institution . . . without discrimination on the ground of race, color, religion, national origin, and sex (including sexual orientation and gender identity)"); S. 4801, 116th Cong. (2020) (same).

damages). Therefore, "[e]ven if a person allegedly excluded from a [place of public accommodation] because of race proves a violation of Title II, she would not be entitled to damages and could only obtain injunctive relief and reasonable attorneys' fees." *Macer v. Bertucci's Corp.*, No. 13-CV-2994 (JFB) (ARL), 2013 WL 6235607, at *7 (E.D.N.Y. Dec. 3, 2013) (dismissing Title II claim where plaintiff only sought damages and had no standing to seek an injunction). Further, a plaintiff only has standing to seek injunctive relief upon a showing of a "real and imminent threat of repeated injury." *Joseph v. New York Yankees P'ship,* No. 00-CV-2275 (SHS), 2000 WL 1559019, at *5 (S.D.N.Y. Oct. 19, 2000) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)) (explaining that plaintiff "must set forth the likelihood of a future encounter with the defendant which is likely to lead to a similar violation of some protected right"). Here, Plaintiff only seeks damages and does not allege that he has been (or is in imminent risk of being) subsequently discriminated against by Chase. (ECF 2 at 6). Therefore, Plaintiff's Title II claim also fails based on the monetary relief sought.

### 2. Section 1981 Claim

Racial discrimination claims related to commercial transactions are often construed as claims under 42 U.S.C. § 1981 ("Section 1981"). *See*, *e.g.*, *Taylor v. Enter. Holding Grp.*, LLC, No. 20-CV-6793 (LLS), 2020 WL 5634266, at *3 (S.D.N.Y. Sept. 18, 2020) (interpreting *pro se* discrimination claim to assert a Section 1981 claim). Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings." 42 U.S.C. § 1981(a). To state a Section 1981 claim, a plaintiff must allege that: "(1) the plaintiff is a

member of a racial minority; (2) [there was] an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute," such as the making and enforcement of contacts. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

To satisfy the third prong in claims brought by customers, the weight of authority requires plaintiffs to allege that they were actually prevented (rather than delayed) from completing a transaction, or at least forced to complete the transaction on different terms from non-minority customers. *See, e.g.*, *Jackson v. Cititrends Utica, New York*, No. 20-CV-14 (GLS/ATB), 2020 WL 3035577, at *1 (N.D.N.Y. June 5, 2020) (dismissing Section 1981 claim when Plaintiffs were able to complete their transaction with another cashier and thus not prevented from purchasing anything at the store); *Benzinger v. NYSARC, Inc. New York City Chapter*, 385 F. Supp. 3d 224, 234 (S.D.N.Y. 2019) ("Virtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase.") (quoting *Rogers v. Elliott*, 135 F. Supp. 2d 1312, 1315 (N.D. Ga. 2001); *Nevin v. Citibank, N.A.*, 107 F.Supp.2d 333, 349 (S.D.N.Y.2000) (granting summary judgment on Section 1981 claim when "[p]laintiff purchased everything she desired"); *Joseph v. New York Yankees P'ship*, No. 00-CV-2275, 2000 WL 1559019, at *3 (S.D.N.Y. Oct. 19, 2000) (denying summary judgment because imposing the

"additional condition" of compliance with a dress code enforced only on minority patrons such as plaintiff violates Section 1981).[5]

Here, Plaintiff alleges a twenty-minute delay and being asked to provide identification, but does not allege that he was ultimately prevented from withdrawing funds at the Stratford branch or forced to do so on terms only imposed on minority customers. (ECF 2 at 5). Indeed, Plaintiff's Complaint provides *no* information about what occurred at the Stratford branch on March 22, 2018 after Plaintiff solicited the manager's assistance. (ECF 2 at 5). Moreover, while the Court confines its decision to the allegations in the Complaint, Plaintiff's opposition also does not suggest that his mistreatment persisted after the manager became involved; instead, it suggests that the manager may have assisted the Plaintiff. (ECF 32 at 3). Ultimately, because of the Complaint's silence on the remainder of Plaintiff's March 22, 2018 visit, Plaintiff has not alleged facts sufficient to satisfy the third element of a Section 1981 claim. The Court therefore dismisses Plaintiff's Section 1981 claim, though it does so without prejudice and with leave to amend to provide the missing factual allegations.

---

[5] *See also York v. JPMorgan Chase Bank, Nat'l Ass'n*, No. CV-18-04039-PHX-SPL, 2019 WL 3802535, at *2 (D. Ariz. Aug. 13, 2019) (finding banking customer did not state a Section 1981 claim where customer was ultimately able to withdraw funds because "[a]lthough she alleges delay and mistreatment due to her race, she ultimately received all that she was entitled to under her contractual relationship with Chase"); c*f. Middleton v. Wells Fargo Bank, N.A.*, 474 F. Supp. 3d 1290, 1296-97 (N.D. Ga. 2020) (finding banking customer stated a Section 1981 claim because "the branch in its entirety—from teller to service manager to branch manager—refused to contract with the plaintiff," forced plaintiff to leave the branch, called the police, and only allowed Plaintiff to return and cash her check once law enforcement deemed it not fraudulent, and therefore plaintiff attempted to contract with the bank on two separate occasions to cash her check, the first of which was "unequivocally" denied); *Watson v. Wells Fargo Bank, N.A.*, No. 8:20-CV-1283-T-60CPT, 2020 WL 7054701, at *2 (M.D. Fla. Dec. 2, 2020) (finding banking customer stated a Section 1981 claim where three bank employees, including a branch manager, refused to allow customer to open an account and customer felt "he had no choice but to leave" the branch).

### C. State Law Claims

Plaintiff brings a bribery claim based upon his allegation that $116 was deposited into his account as an attempt to dissuade him from pursuing litigation. (ECF 2 at 6). Commercial bribery is prohibited under New York Penal Law. N.Y. Penal § 180.03. [6] Additionally, while Plaintiff does not expressly bring any state law discrimination claims, such claims are recognized under, *inter alia*, New York State Human Rights Law, N.Y. Exec. L. § 296, *et seq.*, New York Civil Rights Law § 40, and New York City Human Rights Law, N.Y.C. Admin. Code § 8–101, *et seq*. The Court has jurisdiction over this action by virtue of Plaintiff's federal claims, 28 U.S.C. § 1331, and its authority to decide any state law claims is premised on its supplemental jurisdiction pursuant to 28 U.S.C. § 1367. [7]

A "district court may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Further, "in the usual case in which all federal law claims are eliminated before trial, the balance of factors

---

[6] However, "[i]t appears that every federal court considering the issue has concluded that the commercial bribery sections of the Penal Law do not create a private right of action" and, moreover, there is no private civil cause of action under New York law for "bribery." *Philip Morris, Inc. v. Grinnell Lithographic Co., Inc*., 67 F. Supp. 2d 126, 140 (E.D.N.Y. 1999); *see also Sardanis v. Sumitomo Corp*., 279 A.D.2d 225, 230 (1st Dep't 2001) (observing that "[f]ederal courts in New York [have] . . . consistently den[ied] a private right of action under the commercial bribery provisions of the Penal Law.").

[7] The Complaint alleges that the Court has diversity jurisdiction while also alleging that both parties are citizens of New York. (ECF 2 at 3-4). While case law suggests that there is in fact diversity of citizenship between the parties since Chase is actually considered a citizen of Ohio, the location of its main office, for purposes of diversity jurisdiction, *Griffith-Fenton v. JPMorgan Chase Bank*, N.A., No. 18-CV-11031 (VB), 2019 WL 3006537, at *3 (S.D.N.Y. July 10, 2019), the Court still does not have diversity jurisdiction over the action. Although Plaintiff seeks $25 million in damages, Plaintiff fails to plausibly allege a "reasonable probability" that the actual amount in controversy is in excess of $75,000, as required by 28 U.S.C. § 1332. *See, e.g.*, *Turban v. Bar Giacosa Corp*., No. 19-CV-1138 (JMF), 2019 WL 3495947, at *2-3 (S.D.N.Y. Aug. 1, 2019) (finding plaintiff did not plausibly allege the required amount in controversy where complaint lacked factual support for plaintiff's conclusory, speculative claim of damages); *Weir v. Cenlar FSB*, No. 16-CV-8650 (CS), 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) (same); *see also Wood v. Maguire Auto., LLC*, 508 F. App'x 65 (2d Cir. 2013) (summary order) (affirming dismissal for lack of subject matter jurisdiction because plaintiff's "allegation in her complaint of $75,000 in controversy is conclusory and not entitled to a presumption of truth").

to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988); *see, e.g., Klein & Co. Futures v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."). Accordingly, district courts typically refuse to exercise supplemental jurisdiction after dismissing all federal claims on a motion to dismiss. *See*, e.g., *Akyar*, 2018 WL 4356734, at *5 (dismissing federal claims with prejudice and then dismissing state claims without prejudice with leave to file them in state court); *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 500 (E.D.N.Y. 2019) (dismissing federal and state claims without prejudice, "declin[ing] to exercise supplemental jurisdiction over [p]laintiff's state law claims, unless [p]laintiff can sufficiently allege federal law claims in her amended complaint").

Having dismissed all of Plaintiff's federal law claims over which I had original jurisdiction,[8] the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims *unless Plaintiff can properly allege a Section 1981 claim in an amended complaint*. Accordingly, any state law claims brought by Plaintiff are also dismissed without prejudice.

---

[8] Even if the Court were to construe Plaintiff's bribery claim to fall under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), despite Plaintiff never mentioning the Act, Plaintiff's submissions contain virtually no factual detail supporting an inference of bribery beyond his conclusory statement that the deposit of $116 by Chase was an attempt to bribe him, and thereby would be insufficient to state a claim.

### IV. Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), "[l]eave to amend is to be freely given when justice requires." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 140 (2d Cir. 2013). "[I]t is within the sound discretion of the court whether to grant leave to amend." *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 280, 281 (S.D.N.Y. 2010) (quoting *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994)). Courts will deny leave to amend in cases of, among other things, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and/or] futility of amendment." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (internal citation omitted). However, a *pro se* plaintiff should be afforded leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Plaintiff's Title II claim is dismissed with prejudice because there are no allegations that can qualify banks as places of public accommodation under the statute, and thus any attempt to amend Plaintiff's Title II cause of action would be futile. However, Plaintiff's Section 1981 claim is dismissed **without** prejudice, and Plaintiff is granted leave to file an amended complaint to allege any additional facts supporting his Section 1981 claim. **Plaintiff shall file any such amended complaint by May 3, 2021**. As stated above, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, if any, unless Plaintiff can sufficiently allege a Section 1981 claim in his amended complaint; accordingly, any state law claims are likewise dismissed without prejudice.

**V.      Conclusion**

For the reasons discussed above, Defendant's motion to dismiss is **GRANTED**. Plaintiff's Title II claim is dismissed with prejudice. Plaintiff's Section 1981 and state law claims are dismissed without prejudice, and Plaintiff is granted leave to file an amended complaint to correct his Section 1981 claim by **May 3, 2021**. If Plaintiff fails to do so by that time, this case will be dismissed for failure to prosecute under Federal Rule of Civil Procedure 41.

The Clerk of Court is respectfully directed to close ECF 27, mail a copy of this Opinion to Plaintiff, and note proof of service on the docket.

SO ORDERED.

_s/ Ona T. Wang_

Dated: March 18, 2021  **Ona T. Wang**
New York, New York  United States Magistrate Judge